IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| **DARICE DRONZEK,** | CV 04-6208-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| **JOANNE B. BARNHART,** Commissioner, **Social Security Administration,** | |
| Defendant. | |

**MARK MANNING**
Cram, Harder, Wells & Baron, P.C.
474 Willamette Road
Suite 200
Eugene, OR  97035
(541)686-1969

    Attorneys for Plaintiff

**KAREN J. IMMERGUT**
United States Attorney
**CRAIG J. CASEY**
Assistant United States Attorney
1000 S.W. Third Avenue
Suite 600
Portland, OR  97204-2902
(503) 727-1024

**LUCILLE G. MEIS**
Office of the General Counsel
**JOANNE E. DANTONIO**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue
Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-2730

      Attorneys for Defendant

**BROWN, Judge.**

      Plaintiff Darice Dronzek seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Dronzek's protective application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payment. Dronzek seeks an order reversing the decision of the Commissioner and remanding this action for an award of benefits.

      This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a thorough and careful review of the record, the Court **AFFIRMS** the decision of the Commissioner.

### ADMINISTRATIVE HISTORY

      Dronzek filed an application for DIB on October 14, 1997. The application was denied initially and on reconsideration on July 3, 1998. Dronzek did not appeal those decisions.

2 - OPINION AND ORDER

Dronzek filed the current applications for DIB and SSI benefits on April 5, 2001. These applications were denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on September 5, 2003. At the hearing, Dronzek was represented by an attorney. Dronzek; Susan Dragovich, Pd.D., a medical expert; Reynolds Hoover, M.D., a medical expert; and a vocational expert (VE) testified at the hearing.

The ALJ issued a decision on November 28, 2003, in which he found Dronzek was not entitled to benefits. That decision became the final decision of the Commissioner on June 5, 2004, when the Appeals Council denied Dronzek's request for review.

## BACKGROUND

I.  **Dronzek's Testimony**

Dronzek was born on January 4, 1967, and was 36 years old at the time of the hearing. Tr. 52, 126.[1] She completed high school and obtained Associate of Arts degrees in secretarial science, accounting, and multimedia. Tr. 52-53. Her past relevant work is as a cashier, data-entry clerk, receptionist, and general clerical worker. Tr. 86.

---

[1] Citations to the official transcript of record filed with the Commissioner's Answer on October 13, 2004, are referred to as "Tr."

3 - OPINION AND ORDER

Dronzek testified her most recent schooling ended in June 2000 when she graduated with a multimedia degree. Tr. 53. Dronzek stated she was doing volunteer work for art galleries that included "doing press releases" and taking meeting minutes approximately five hours per month. Tr. 53. Dronzek further noted she had "a few clients" for part-time web-design projects that she worked on between two and fifteen hours per week. Tr. 53.

Dronzek testified she has fibromyalgia and psoriatic arthritis, which cause "a lot of pain every day." Tr 53-54. Dronzek stated she has pain in her arms almost everyday. Tr. 57. Dronzek also stated she had swelling and temperature differences in her left arm from her fingers to her elbow initially, and now the temperature differences and swelling have spread to her right arm. Tr. 58. Dronzek testified this swelling causes her to have problems holding objects and manipulating things. Tr. 59. Dronzek also testified she has had pain and mobility problems with her left shoulder for five years. Tr. 60.

Dronzek stated she has sciatica in her hips and, as a result, can walk for 15-20 minutes. Occasionally she has problems with sitting. Tr. 60-61. Dronzek testified she cleans her house, vacuums and does laundry.

In response to questions from Dr. Dragovich, Dronzek stated numerous doctors had recommended she receive mental health

treatment.  She was not doing that, however, because she has good family support and "a good foundation with God."  Tr. 65-66.

## II.  Medical Evidence

Except when noted, Dronzek does not challenge the ALJ's summary of the medical evidence.  Dronzek, however, contends the ALJ improperly rejected some medical evidence and failed to apply proper legal standards when he weighed the evidence and made his decision.

After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 21-27.

## **STANDARDS**

A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests on the claimant to establish his disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are

supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISABILITY ANALYSIS

**I. The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Yuckert*, 482 U.S. at 140. *See also* 20 C.F.R. § 416.920(b).

In Step Two, the claimant is not disabled if the

Commissioner determines the claimant has no "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 416.920(c).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 416.920(d). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.945(a). *See also* Social Security Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. § 416.920(e).

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20

C.F.R. § 416.920(e), (f).  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can do.  *Yuckert*, 482 U.S. at
141-42.  *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.
1999).  The Commissioner may satisfy this burden through the
testimony of a VE or by reference to the Medical-Vocational
Guidelines set forth in the regulations at 20 C.F.R. pt. 404,
subpt. P, app. 2.  If the Commissioner meets this burden, the
claimant is not disabled.  20 C.F.R. § 416.920(f)(1).

**II.  The ALJ's Decision**

The ALJ noted "serious issues regarding [Dronzek's] . . .
performance of substantial gainful activity" including evidence
in Dronzek's testimony at the hearing and in numerous references
in the record to Dronzek working as a web designer.  Tr. 21.
Nonetheless, the ALJ found, "for purposes of this decision only,"
Dronzek had not performed any substantial gainful activity since
her revised alleged onset date of November 1, 1999.  Tr. 21.

The ALJ determined Dronzek has fibromyalgia, obesity, a
history of left-arm reflex sympathetic dystrophy, psoriatic
arthritis, and somatoform pain disorder associated with
psychological and general medical conditions.  Tr. 30.  The ALJ,
however, found these impairments do not meet or equal the listed
impairments.  Tr. 20.  The ALJ assessed Dronzek with the RFC for
a wide range of work in the "light and inclusive sedentary levels

of exertion." Tr. 33. The ALJ concluded Dronzek could perform her past relevant work as a receptionist and general clerical worker. Tr. 34.

## DISCUSSION

Dronzek contends the ALJ erred when he: (1) rejected Dronzek's subjective symptom testimony and (2) rejected the opinions of Dr. William Maier, M.D., and Dr. John Lebow, D.O., treating physicians, and Dr. Sally Grosscup, examining physician.

### I. The ALJ's Rejection of Dronzek's Testimony

Dronzek alleges the ALJ erred when he failed to give clear and convincing reasons for rejecting Dronzek's testimony.

"If the ALJ finds that the claimant's testimony as to the severity of [the claimant's] pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). When weighing the claimant's credibility, the ALJ may consider "inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's

9 - OPINION AND ORDER

credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas,* 278 F.3d at 958.

The ALJ found Dronzek's testimony regarding her ability to work was not credible and identified inconsistencies between Dronzek's testimony and the medical record. Tr. 21. For example, the ALJ noted Dronzek testified she had a lot of pain every day in her shoulder and arm preventing her from working, but the record contains numerous references to Dronzek working as a web designer and clerical worker (typing). Tr. 430-31, 452, 515. Dronzek testified she works part-time up to fifteen hours per week as a web designer, and she does press releases and takes meeting minutes for art galleries. Dronzek also worked towards and received a degree in multimedia after her alleged onset date.

The ALJ also pointed out Brett Stacey, M.D., examining physician, noted Dronzek tested positive for all 18 fibromyalgia tender points, but Dronzek also reported "3/3 positive control points," which indicates an exaggeration of symptoms. Tr. 31, 472.

In addition, the ALJ considered the notes of Peter Ganter, M.D., treating physician, which indicated the possibility that Dronzek's symptoms "especially the swelling, could be factitious." Tr. 365. After an interview with Dronzek's mother, Dr. Ganter noted Dronzek "used her symptoms to express her

10 - OPINION AND ORDER

dependence needs and to get attention." Tr. 365. The ALJ noted Henry Holmes, M.D., examining physician, reported Dronzek had "possible unconscious secondary gain factors" that caused exaggeration of her symptoms. Tr. 422. As early as December 1998, Dr. Holmes recommended against "further medication trials" and noted "[a]t probably an unconscious level, the patient's pain seems to be serving a useful purpose and medications and other treatment have only led to idiosyncratic reactions." Tr. 423. Thomas Wuest, M.D., examining physician, noted Dronzek "and her mother's relationship, I think is an enabling one, and they tend to play off one another in magnification of [Dronzek's] symptoms." Tr. 426.

The ALJ also considered Dronzek's failure to comply with treatment recommendations by her treating physicians, in particular those recommendations regarding regular exercise and psychological counseling. Tr. 31, 507, 519, 546, 551-53, 593.

On this record, the Court finds the ALJ did not err when he rejected portions of Dronzek's testimony because he provided a legally sufficient basis supported by the record for doing so.

**II. The ALJ's Rejection of Opinions of Treating and Examining Physicians**

Dronzek contends the ALJ improperly rejected the opinions of Drs. Maier, Lebow, and Grosscup. Drs. Maier and Lebow were two of Dronzek's treating physicians, and Dr. Grosscup was one of Dronzek's examining physicians.

11 - OPINION AND ORDER

It is well-settled that "greater weight is afforded to the opinion of a treating physician than to that of [a] non-treating physician, because the treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993) (internal quotations omitted). A treating physician's opinion is controlling when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other evidence of record. 20 C.F.R. § 404.1527(d)(2). When a treating physician's opinion is not entitled to controlling weight, the ALJ must give "specific, legitimate reasons" for rejecting it if that opinion conflicts with another physician's opinion or with evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). When the opinion of the treating physician or other medical expert is uncontroverted, the ALJ must give "clear and convincing reasons" before rejecting such an opinion. *Id*. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).

**A. Dr. Maier**

The ALJ rejected Dr. Maier's July 2001 assessment that Dronzek could lift only ten pounds, stand or walk less than two hours in an eight-hour day, sit less than six hours in an eight-hour day, and had limitations in gripping. Tr. 32. The ALJ noted the record did not contain any evidence of back

abnormalities or other issues that would limit Dronzek's ability to sit, to stand, or to walk for prolonged periods without normal breaks. Tr. 32. The ALJ also noted Dr. Maier's limitations regarding grip were directly contradicted by his October 2001 physical examination in which he noted Dronzek had "good fist and grip." Tr. 32, 535.

Dr. Maier's limitations were also contradicted by several physicians. Dr. Wuest noted only mild swelling and breakaway weakness in Dronzek's left shoulder and arm. Tr. 425. X-rays showed only "very mild" inferior subluxation. Tr. 425. Kathleen Fitzgerald, M.D., treating physician, performed a nerve conduction study and examination. Tr. 500-11. The nerve conduction study and MRI were both normal. Tr. 504-06. After these results, Dr. Lebow noted there was no viable reason for Dronzek's reports of left-arm pain. Tr. 506. In addition, in September 2001, and January 2002, Dr. Maier did not find any evidence of inflammatory arthritis. Tr. 535, 537.

On this record, the Court finds the ALJ did not err when he rejected Dr. Maier's opinion regarding Dronzek's functional limitations because the ALJ provided clear and convincing reasons supported by the record for doing so.

**B. Dr. Lebow**

Dr. Lebow opined Dronzek was limited to lifting ten pounds,

could stand or walk only two hours in an eight-hour day, and could sit for only two hours in and eight-hour day, but he reported Dronzek did not have any gross gripping or fine manipulation limitations.  The ALJ rejected this opinion for the same reasons he rejected Dr. Maier's similar assessment.

On this record, the Court finds the ALJ did not err when he rejected Dr. Lebow's opinion regarding Dronzek's functional limitations because the ALJ provided clear and convincing reasons supported by the record for doing so.

**C.   Dr. Grosscup**

Dr. Grosscup performed consultative psychological examinations of Dronzek in August 2001 and May 2002.  In August 2001, Dr. Grosscup noted Dronzek reported a wide circle of friends with whom she kept in touch via telephone and email and saw monthly.  Tr. 516.  Based on the results of the Digit Span subtest, Dr. Grosscup noted Dronzek's attention and concentration were "intact and within the high average to superior ranges." Tr. 517.  Dronzek's sustained attention and response speed were within the average range.  Tr. 517.  Dr. Grosscup noted Dronzek reported problems with short and long term memory, however, these reports were "completely inconsistent with test results."  Tr. 518.

In August 2001, Dr. Grosscup reported Dronzek did not have any difficulty taking care of her basic needs and was able to assist in caring for her mother. Tr. 519. Dr. Grosscup opined "[i]ntellectually, Ms. Dronzek has no deficits which would interfere with her ability to seek and maintain employment . . . . [Dronzek] would have no difficulty remembering and retaining information." Tr. 520. Dr. Grosscup assessed Dronzek with a Global Assessment Functioning (GAF) of 50 and a GAF of 60[2] within the previous year. Dr. Grosscup noted Dronzek's "level of functioning is considered mild to moderately impaired occupationally, with no impairment in basic self care or social functioning." Tr. 520-21.

In May 2002, Dr. Grosscup reported Dronzek was still quite social: she was seeing a "male friend" twice a week and keeping in touch with friends via email and telephone as well as seeing her mother and sister frequently. Tr. 525. Dr. Grosscup did not conduct any further testing of Dronzek and noted there was not any evidence of impairment with memory, attention, comprehension,

---

[2] The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100. *Diagnostic and Statistical Manual IV* (DSM-IV) 30-32 (4th ed., 2000). A GAF of 41-50 indicates serious impairment in functioning. DSM-IV 32. A GAF of 60 indicates a moderate level of impairment. DSM-IV 32.

15 - OPINION AND ORDER

or processing speed. Tr. 526. Dr. Grosscup assessed Dronzek with a GAF of 35 at that time and opined her highest GAF in the past year was 35.[3]

The ALJ rejected Dr. Grosscup's opinion that Dronzek had a GAF of 35 in May 2002 and noted that conclusion was not supported by her contemporaneous chart notes. Tr. 24, 514-20. Nothing in Dr. Grosscup's chart notes suggests Dronzek had a major impairment in any area of functioning. The ALJ also noted Dr. Grosscup opined Dronzek's highest GAF in the year before May 2002 was 35. Less than a year earlier in August 2001, however, Dr. Grosscup assessed Dronzek with a GAF of 50. Tr. 27, 521. The ALJ also considered Dr. Grosscup's opinion in May 2002 that Dronzek did not have any compromise of concentration, persistence, or pace and Dr. Grosscup's notes that Dronzek continued to be quite social interacting with friends and family daily. Tr. 27, 524-26.

On this record, the Court finds the ALJ did not err when he rejected Dr. Grosscup's May 2002 opinion regarding Dronzek's GAF in May 2002 because the ALJ gave legally sufficient reasons supported by the record for doing so.

---

[3] A GAF of 31-40 indicates major impairment in several areas of functioning. DSM-IV 32.

In summary, after a thorough review of the record, the Court concludes the ALJ did not err when he found Dronzek was not disabled as defined in the Social Security Act because the ALJ provided a legally sufficient basis supported by the record for doing so.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner.

IT IS SO ORDERED.

DATED this 16th day of May, 2005.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

Dronzek CV 04-6208 O&O.05-13-05.wpd